UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-CV-11324-RGS

ALLISON E. KENNEDY and ROBERT THURSTON LOVE
as PERMANENT GUARDIANS OF LELIA M. LOVE

v.

JP MORGAN CHASE NATIONAL CORP., and
WASHINGTON MUTUAL BANK

FINDINGS, RULINGS OF LAW, AND ORDER ON DEFENDANT
JP MORGAN CHASE'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT

April 26, 2011

STEARNS, D.J.

The factual background can be quickly sketched for present purposes. The case began with the July 19, 2010 filing of a Complaint against defendant JP Morgan Chase National Corp. (JP Morgan)[1] in Barnstable Superior Court by the guardians of Lelia Love, an elderly woman who apparently suffers from advanced dementia. The purpose of the action was to obtain a declaratory judgment forestalling a foreclosure on Love's home at 4 Spinnaker Lane in Falmouth, Massachusetts. How an elderly, apparently

---

[1] JP Morgan is the successor to the since dissolved Washington Mutual Bank (WAMU).

mentally disabled woman with no real income came to owe a $1.2 million mortgage to WAMU is a matter of a bitter dispute that is not relevant to the instant decision.

A foreclosure action on 4 Spinnaker Lane was originally initiated by WAMU (or someone acting on its behalf) in 2008, but for unexplained reasons was voluntarily withdrawn. When proceedings were reinitiated in June of 2010, Lelia Love's guardians (her son, Robert Thurston Love, and her daughter, Allison E. Kennedy) hired attorney David V. Lawler, a lawyer based in Hyannis, Massachusetts, to represent their mother. Lawler filed a Verified Complaint the day before the scheduled July 20, 2010 sale and succeeded in obtaining a restraining order in the Superior Court temporarily halting the foreclosure. On August 6, 2010, JP Morgan removed the case to this court on diversity of citizenship grounds.

After the removal, Lawler began settlement discussions with attorney James Fox, a Boston-based lawyer representing JP Morgan. On September 8, 2010, Lawler made a tentative offer to Fox under which Love would dismiss her claims against JP Morgan in exchange for a life estate in the property. The lawyers then met face-to-face to negotiate a settlement. On September 17, 2010, Fox mailed a written proposal to Lawler offering to permit Love to remain in the home through March of 2011 (subject to a number of conditions). On September 27, 2010, Lawler met with Robert Love and Allison Kennedy to discuss JP Morgan's offer. He then responded as follows to Fox

2

by email.[2]

> In that regard, I am authorized to offer settlement of all claims, with the guardians [of] Mrs. Love to provide J.P. Morgan Chase with a deed in lieu of foreclosure or what other reasonable and necessary documents they would require, in exchange for allowing Mrs. Love to remain in her home through October 31, 2011. In addition my client would require the payment of $25,000, to enable her to move out of her home, which she has resided in her whole life. This payment would be contingent upon her moving out prior to October 31, 2011, if she failed to do so the $25,000 key money would be forfeited. Lastly, my clients would allow J.P. Morgan Chase to reasonably market the property during occupancy. The parties would agree to exchange mutual releases and dismiss the present litigation with prejudice.

Def's Hr'g Ex. 5.

After an hiatus in communication, on November 22, 2010, Fox emailed Lawler stating that he was "pleased to accept your offer on behalf of the defendants. The matter is now settled. I will prepare the settlement documents necessary to facilitate the settlement." On December 10, 2010, Fox mailed a written Settlement Agreement to Lawler. The terms tracked those of Lawler's offer except in one significant respect. In lieu of the undertaking on behalf of Love to provide JP Morgan with a deed in lieu of foreclosure, Fox's letter read:

> NOW, THEREFORE, in consideration of the promises and conditions set

---

[2] During the April 22, 2011 evidentiary hearing, Robert Love initially denied that any such meeting with Lawler had taken place, but later revised his testimony. According to Allison Kennedy, the meeting lasted nearly two hours, but in the end she had agreed only to authorize Lawler to continue the negotiations with JP Morgan.

3

> forth herein, the sufficiency of which is hereby acknowledged, the parties agree, as follows:
>
> 1. JPMorgan or its nominee shall commence foreclosure proceedings pursuant to its Mortgage. Lelia Love hereby acknowledges and consents to the foreclosure of the Mortgage and agrees that she will not take any action which will in any way impede or otherwise interfere with the sale and/or foreclosure of the Property by JPMorgan or its nominee.
> 2. Lelia Love shall surrender possession and fully vacate the Property on or before October 31, 2011, leaving the Property in good broom clean condition, reasonable wear and tear accepted. Lelia Love shall give JPMorgan, through its Attorney James B. Fox, five (5) days written notice prior to vacating the Property.

Def.'s Hr'g Ex. 6.

Lawler was absent from his office over the next month while recovering from knee replacement surgery. On January 7, 2011, Fox emailed Lawler asking if the case could be reported settled. Lawler replied the same day, advising Fox to "[h]old off, my clients are ready to sign but I would hold off until I have actual signatures." Lawler's hesitation was explained by the fact that he had earlier had a contentious conversation with Allison Kennedy who, among other things, wanted an additional $15,000 from JP Morgan in transitional assistance for her mother. A meeting the day before between Lawler and Robert Love had also not gone well. Although Robert Love signed the Settlement Agreement,[3] he told Lawler that he was upset about the omission of the

---

[3] Robert Love testified somewhat unconvincingly that he signed "only to get back the papers."

deed in lieu of forfeiture provision from the draft prepared by Fox. He was particularly concerned that a foreclosure proceeding would be perceived as a "stigma" on his mother's name and reputation. Matters remained in limbo until January 25, 2011, when Robert Love and Allison Kennedy sent Lawler a certified letter rejecting the settlement.[4]

On February 10, 2011, JP Morgan filed the instant motion to enforce the Settlement Agreement. That same day, Lawler filed a motion to withdraw as counsel for Lelia Love stating that communications had broken down with his clients and that he "[could] not go forward without pursuing a course of action considered repugnant or imprudent." On February 28, 2011, the court allowed Lawler's motion, giving plaintiffs thirty days to find successor counsel (which they did). Deeming resolution of the dispute to require findings of fact, the court scheduled an evidentiary hearing for April 22, 2011, and directed Robert Love and Allison Kennedy to show cause why the Settlement Agreement should not be enforced. For purposes of the hearing, Robert and Allison waived all claims of attorney-client privilege. The court then heard testimony from Lawler, Robert Love, Allison Kennedy, and Fox.

## RULINGS OF LAW

---

[4] Neither party offered the rejection letter into evidence, although Lawler testified to its receipt.

Although the court initially believed that it was required to resolve issues of credibility as between Lawler and his clients, having seen the exhibits and heard the testimony, it is clear that the dispute can be resolved as a basic matter of contract law. In the formation of a contract, an offer is "a conditional promise dependent for its enforceability on the offeree giving in exchange the offeror's requested act, forbearance or return promise; or alternatively, the offeror's manifestation of willingness to enter into a proposed bargain communicated in such a manner that the offeree may understand that by assenting the bargain will be concluded." *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 407 (1991), quoting 1 S. Williston, *Contracts* § 4.4, at 266-267 (4th ed. 1990). An offer must be matched by an acceptance. *Laprade v. Fitchburg & L. St. Ry. Co.*, 205 Mass. 77, 79 (1910). A counteroffer proposing a term that is materially different from that contained in the original offer constitutes a rejection of the offer and negates any agreement. *See Bank of United States v. Thomson & Kelly Co.*, 290 Mass. 224, 228 (1935); *Moss v. Old Colony Trust Co.*, 246 Mass. 139, 148 (1923).

What is lacking here is an agreement on a material term of the contract,[5] the substitution of a deed in lieu for a foreclosure proceeding. Under a deed in lieu, the borrower conveys a fee-simple title to the mortgagor in exchange for a forgiveness of

---

[5] In the law of contracts, a material term is "an essential and inducing feature of the contract[]." *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930).

6

the debt secured by the mortgage. Not only does the deed in lieu allow the mortgagee to avoid the stigma of a foreclosure, but it can be of significant economic benefit to the borrower where the value of the real estate is considerably less than the balance due on the mortgage. "[A] lender who takes a deed in lieu is generally *less* protected than a lender using formal procedures." *Moloney v. Boston Five Cents Sav. Bank FSB*, 422 Mass. 431, 435 & 436 n.8 (1996) (noting that "in most cases the agreement accompanying the deed in lieu contains either a release of the underlying debt or a covenant not to sue for deficiency.").

As Attorney Lawler candidly testified at the hearing, the deed in lieu was not only a material term of the offer made to JP Morgan, but it was regarded as such by Robert Love.[6] Lawler also agreed that the Settlement Agreement varied materially on this point from the offer he had extended on behalf of his clients, and that for reasons he could not explain, he simply missed the discrepancy when reviewing the paperwork. Because the Settlement Agreement was in effect an unaccepted counteroffer, no meeting of the minds took place. Consequently, there is no agreement for the court to enforce.

---

[6] Attorney Fox testified at the hearing that the deed in lieu was immaterial to JP Morgan and would have been willingly substituted for the foreclosure provision in the draft of the Settlement Agreement had Robert Love and Allison Kennedy made such a request. It is, however, a basic rule of contract law that both the offer and acceptance must be communicated if a binding agreement is to be formed. *See Cruver Mfg. Co. v. Rousseau*, 240 Mass. 168, 169 (1921).

ORDER

For the foregoing reasons, JP Morgan Chase's Motion to Enforce Settlement is DENIED. The parties will submit a proposed joint scheduling order within fourteen (14) days of the date of this decision regulating any remaining discovery that is to be conducted.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE